Ms. Bonnett was denied a discharge of a $640,000 debt without an evidentiary hearing under Section 523. As this Court knows, the general rule is the debtor gets a discharge and a fresh start, and the denial is an exception, so the creditor bears the burden to establish the basis for the exception. This case was resolved on summary judgment. The Bankruptcy Court granted summary judgment under 523A2, relying on a state court judgment under a different statute involving different elements, different burdens of proof. The only evidence that we have for this record is this minute entry from the state court. It's a 12-page minute entry, and I know that the Court has read it, and I would actually then like to talk about something that's not in the briefs that I kind of realized when I was preparing for this argument. So the creditor has the burden of proving all five elements under Section 523A. Can I interrupt you for one second? I agree that the creditor has the burden, but the burden is the same both at the state court and in the Bankruptcy Court, right? It's a preponderance of the evidence, correct? Well, but in this case, Your Honor, the Bankruptcy Court relied on... I'm asking a simple question. Is it a preponderance of the evidence standard? That standard, that's correct. In both places? Yes. Okay, so as long as you get the 50.00001, you win. If you don't, you don't, right? Right. In both places? Yes. Okay. But the person who has the burden switches. So in this case... But it doesn't... I mean, if it's a matter of you're either at 50.00001 or not, what's the difference? The issue here is who had the burden. So the Bankruptcy Court relied on, and it could only rely on, this one finding of Ms. Goodfay. Okay? There was no finding of intent. All right. So when you look at where does Goodfay come in under the UFTA, it only comes in under 44.1008. Well, that is actually an affirmative defense for the transferee. So the transferee has to prove, in order to avoid having the transfer avoided, the transferee has to show that she took the transfer in good faith and for sufficient consideration. Whereas under Section 523A2 and all non-dischargeability proceedings, it is the creditor who has the burden of proof. Well, what's... How do you show good faith or not? What are the concepts there? Yes. So good faith, and again, this is under Title 44 under the Arizona statute. And Arizona cases describe good faith in a couple of different ways, but they're subjective. They're, did a reasonable person under these circumstances have notice of something off about this transaction? Would a reasonable woman of reasonable intelligence have understood that there was something about this transaction? There's nothing about that. Sorry to interrupt you. There's nothing about that that's conceptually different from the affirmative case. People don't regularly admit, yeah, I intended to defraud somebody. So we're looking at inferences either way, right? That's the point. I mean, it's an inferential inquiry one way or the other, whether you're talking about the transferor or whether you're talking about a particular transferee, and you're right, to prevail against a particular transferee, there is a good faith defense, and I was asserted here. So it was available to the transferee and it was unsuccessful, right? So she did not convince the state court that she acted in good faith, correct? That's correct, but there was not a finding either that she acted in bad faith. And remember the Anastas case, the Ninth Circuit case, says you cannot, in a non-dischargeability proceeding, simply impute intent, wrongful intent, to the debtor. And that's... Given the state court... I'm sorry. Well, Ms. Samuels, I'd like to ask you about a very specific finding and how that fits into your case here, and that's finding number 25, which says, when, and I'm probably mispronouncing these names, Liz Dunvarna faced financial difficulties, the GUMAS and Bonnet constructed a scheme to transfer assets away from the businesses the debtors operated to Bonnet for the purpose of protecting those assets from creditors. That's a finding of Ms. Bonnet's participation. She constructed the scheme together with someone else and she did it to move assets away from creditors. Why isn't that something that the bankruptcy court could rely on as having preclusive effect? Well, that statement, sure, it's a factual finding that could be relied on, but it doesn't say intent. It's constructed a scheme. People construct schemes all the time, but remember, there has to be a specific finding of actual intent. And you know, I should point out, the state court did make findings of intent, so it's not like the state court didn't know how to make a finding of actual intent. It made those findings as to GUMAS and his company. So if you look at, for example, paragraph 67, so GUMAS's transfer of the management interest to Bonnet and Madison was a method of protecting that asset. And then paragraph 57, the transfer of the management interest was made with the intent to hinder, delay, or defraud creditors. So the transfer, which was made by GUMAS to Bonnet, was made with actual intent. But there is no finding in a 12-page minute entry that Ms. Bonnet accepted the transfers with intent. So is that, you know, I'm trying to figure out what would be tried here. If the court gives preclusive effect to finding 25, is it Bonnet, not Bonnet? I don't want to mispronounce her name. It's Bonnet. Bonnet. OK. So when Ms. Bonnet, if the court gives preclusive effect to a determination that Ms. Bonnet constructed the scheme to transfer assets away from creditors for the purpose of protecting those assets, we would then try whether she received them with the intent to carry out the scheme? Well, that's correct. And, you know, there was not an evidentiary hearing. So this court, remember, is not being asked to determine dischargeability or non-dischargeability. Understood. OK. So I'm just trying to figure out if we send it back, one of the things we will have to do or should do is to tell the trial court what they need to do. And I'm struggling a little bit with some things. You know, I'm not going to, do I tell the trial court that they can't take issue, apply, I'm sorry I'm holding up the findings, apply issue preclusive effect to finding number 25, but you've got to, you know, it seems like we're splitting hairs here. I'm a little concerned about that. Not really. I mean, that certainly could be fleshed out. All of these issues could be fleshed out to find whether these transfers were accepted, whether she received transfers with actual intent. And, you know. Can I stop you to make sure? I think I'm hearing what you're saying. You think there's a material difference between the state courts finding that the transfer and transferee were in a close personal relationship and the transferee participated in a scheme that had the effect of keeping certain assets from certain creditors, and yet you think at the same time there's room there to argue that she didn't take them with intent. That's exactly right, because there was no. I just want to make sure I understood what you're saying. That's right, and here's another way to look at it. One of the prongs, one of the elements of issue preclusion is whether a finding would have been essential to the prior determination. So, let's assume, and the state court did not make a finding of actual intent by Ms. Bonet, but let's assume it did. It would not have been essential to any finding under Title 44. Okay, so under Title 44, you're looking at the intent of the transferee, not of the transferee. That's essential. You're looking at whether the transfer should be avoided, and then you're looking at, again, under 44-1008, which is the affirmative defense for the transferee. Did the transferee take the transfer, accept it in good faith and for substantial consideration? But they're both defendants, and you're looking at both of their intent, aren't you, at the end of the day? But the state court did not look at Ms. Bonet's intent. Well, I know that's your assertion, but if you begin with the premise that there's some difference in terms of the parties, that's just wrong. I mean, the transferor and the transferee are both sued. They're both defendants, right? Remember, the judgment, I'm not sure I understand your question, but the judgment in the state court was against Gumas and his companies. So he and his companies were the judgment debtors. Ms. Bonet was not a judgment debtor. Well, I'm sorry, so there was not a judgment that the thing should be recovered from the transferee? Yes, that's the state court judgment, but... Okay, I'll go back and have a look at it. Thank you. It was to effectuate the judgment that was against Gumas and his companies. Okay. You're right at your five to three minutes, so you can continue or you can reserve your time. The court doesn't have any more questions right now. I would like to reserve the time, and I would ask that the court reverse and permit the matter to proceed on the merits at an evidentiary hearing. Thank you. Okay. Well, you're going to have three minutes to emphasize that to us. Thank you. All right. Mr. Rudd. Good morning. Phillip Rudd on behalf of the Appalachian Morbia Scottsdale. First, Ms. St. Wise is incorrect. There was, in fact, an evidentiary hearing. There was four days of trial in front of a state court judge with several witnesses, including the transferor and the transferee and other participants in this scheme to transfer. So there was, in fact, four days of trial. This isn't just a summary judgment. This is based on four days of trial and 14 pages of, or whatever it is, of findings of fact by a state court judge that sat there and listened to these witnesses. Just like you guys are trial judges, you had a trial judge that listened to these witnesses and made these findings. I'm going to skip over some of the preliminaries and go right to the heart of it. And the heart of it is this. Again, Ms. St. Wise is incorrect. The actual intent was found. And what we need to look at is when you're dealing with the determination of actual fraud in a fraudulent transfer context, particularly when you're dealing with the recipient of a fraudulent transfer, the case authority is clear that there are at least two ways to demonstrate the requisite fraudulent intent on the part of the recipient of a fraudulent transfer to make a finding of actual fraud under 523A2. The first is by the recipient's acceptance of a transfer that she knew was made with the purpose of hindering the transferor's creditors. And that's from the Lawson case, the First Circuit Lawson case, where a daughter knowingly received and accepted transfers from her father that were designed to prevent a creditor from collecting against the father. The First Circuit held there that Section 523A2a continues to bar from discharge debts incurred through knowing and intentional receipt of fraudulent conveyances. There's a similar case. Mr. Rowe, can I ask you to go, you know, there's an interesting point here because I think we understand the standards between the two and how they mesh. But her point that resonates to some extent is in the case before the state court, to the extent her state of mind was at issue, she had the burden of proof. So if it was 50-50, she lost. Here, your client has the burden of proof, so it's 50-50, she wins. How do we, can you unpack that for us and tell us why that isn't a problem? Sure. And I'm going to, with all due respect, I'm going to correct you on something. I think that Ms. Anne White was saying that with respect to the good faith argument, Ms. Bonet had the burden of proof. But with respect to the primary issue, which is were these transfers made with the intent to hinder, delay, and defraud creditors, certainly my client had the burden of proof and satisfied that burden of proof under the preponderance of the evidence. Did you satisfy it as to Ms. Bonet? Would it not have been sufficient if you had satisfied it as to Gumas? And we believe, Judge, that it was satisfied as to both. And let's talk about what the judge found with respect to Bonet's activity here. And keeping in mind what's required under 523A2A. What's required under 523A2A is either or both the knowing receipt of a fraudulent transfer or the act of participation in the scheme to defraud. So let's look at what the state court found. First, and this, frankly, in my opinion, is dispositive, and that's the provision, Judge, in paragraph 25 that you just pointed out, where the state court expressly found that Gumas and Bonet constructed a scheme to transfer assets away from the businesses for the purpose of protecting those assets from creditors. That, Judge, by itself, in my opinion, is sufficient to satisfy that burden. But there's other stuff, too. Can I stop you for one sec and see if I'm on the same page with you about something? I agree that, you know, this you could be right on the 50-yard line here is complicating. But I think, I mean, let's play it forward just a little bit. You're right that you begin with the question about the transferor's intent, right? Because without that, you don't have a main case. But then there is this affirmative defense that not only would get the transfer out from liability, it would mean the transfer isn't, you know, isn't recoverable, right? That's the point of the affirmative defense. Right. Okay. Well, Judge, if I may stop you real quick, I'm not sure that that's really an affirmative defense. I know the case authority says that, and I know that Ms. Sandwife says that. But if you look at the actual statute, I don't know that the good faith aspect of 44-1008 is actually an affirmative defense. Because it says a transfer or obligation is not voidable under 44-1004A, which is the Intentional Quadrant of Commands, against a person who took in good faith. Right. Okay. It doesn't say that good faith is a defense. Okay. It says that you can't avoid it for somebody that has it. And I think that's one way of getting to my next question, which is, I mean, if this is a burden issue on the transferee, I guess you can imagine a scenario where a judge says, gosh, I've heard all this testimony. I like all of you. I can't make up my mind. Gee, transferee, it was your burden. You didn't carry it, so too bad you lose. This is way more than that, you would tell me, right? I mean, this is a finding of participation. That is absolutely correct. This is a finding of participation. And not only that, Judge, but I don't think that Ms. Sandwife has presented any case authority to you that says that the person that had the burden of proof in the prior trial, if there's a different person that has a burden of proof, that that can't still be used for collateral estoppel purposes. The cases that Ms. Sandwife has cited to you talk about, as you pointed out originally, Judge Lafferty, talk about the degree of the burden. If it's clear and convincing in one place and it's preponderance in the other scenario, then you cannot use collateral estoppel. And I think the case authority is clear on that. That's what Tilbury, the Tilbury case says. But the Tilbury case does not say that if one party had the burden in the prior litigation, then you can't use that in subsequent litigation if the other party has the burden. And frankly, Judge, I didn't find any cases that say that, and I don't think Ms. Sandwife cited any. But doesn't it make sense? I mean, assuming my 50-50 scenario, and it's rare, but occasionally you have that case where, as the trier of fact, it's a push. You can't tell. Somebody's lying and you can't tell who it is. It's 50-50. And you decide it based on the burden of proof. And take that. If the burden of proof, it's preponderance, it's 50-50, if you lose here, but if you have the burden someplace else, or you win here, but if you have the burden in the next court that looks at it, you're going to lose. I'm intrigued with that, and I agree there's no case law, but it seems analogous to the clear and convincing versus preponderance kind of case law that we do have. And I understand that you're struggling with that, Judge, but I think here you can tell just by the findings that this was not a 50-50 issue. You can tell by the findings that this judge was clearly convinced that she participated in this fraud. That's the first thing. And the second thing is I do want to make sure that — Can I ask a question about that? I'm sorry to interrupt you again. Well, to Ms. Sandwife's point, how come there aren't a whole lot more findings about that? There's a finding. I mean, it's a finding, but it's pretty darn conclusory. And there are some findings that seem to be a whole lot more detail-oriented, but this one seems to kind of just say something and move away. So, you know, can you remark on the fact that it's one finding and you could characterize it as a little bit conclusory? I disagree that it's just one finding, Judge, and here's where there's more findings. Ms. Sandwife said that there's a whole bunch of findings in the findings and conclusions that talk about the transfers being made with the intent to hinder, delay, or defraud creditors. And she says, well, the judge doesn't say that that intent was Ms. Bonet's intent. It just says the intent to hinder, delay, and defraud creditors. It also doesn't say, Judge, that it's just Gubas's intent. And if you look at one of the very first findings in the findings of fact, and that's at paragraph 20 at page 331 of the record, the state court, one of its initial findings is this. Gubas and Bonet's personal relationship had a significant impact upon their business dealings, and here's where it's important, and their intentions underlying the transfers alleged in this lawsuit. At the very beginning of this rather lengthy decision on findings of fact, the state court established that his rulings with respect to the intentions regarding the underlying transfers alleged in this lawsuit is both Bonet's and Gubas's. Together, their intentions. I think I want to follow that through because I think it's— and why was that—can you articulate for us why that joint determination of joint intent was necessarily decided outside the affirmative defense context that might have been 50-50? Great question, Judge, and that's actually where I was going before because I wanted to make sure that we make a distinction because there's two places where these decisions about Ms. Bonet's intent are necessary to the ultimate decision. The first one is one we've already talked about, which is the good faith provision of 44-1008. The other place is 44-1004A1 is the intentional fraud, right? As everybody knows, you're not usually going to have somebody that sits on the witness stand and says, yes, I intentionally defrauded people, so what do you have? So what do you have to look at as triers of fact? What do you look at? You look at these badges of fraud, and section 44-1004B has a whole laundry list of the badges of fraud, but those are not exclusive, and you'll see that in— there's an Arizona case called Carey v. Soucy that expands on what those badges of fraud are, and it's quoted in the brief, but I'm going to read it to you here. It says, the badges of fraud include facts which throw suspicion on a transaction and which call for an explanation. They are the signs or the marks of fraud. They do not themselves, per se, constitute fraud, but they have a tendency to show the existence of fraud. And I can go on, but basically there's a whole bunch of different facts that you can show for fraud, and that's the badges of fraud. Here, the state court specifically made a conclusion that says that, pursuant to section 44-1004A1, and based upon the consideration of inter alia, the factors set forth in ARS section 44-1004B, Madison and Bonet were the recipients of fraudulent transfers. So the state court told us that he was relying on badges of fraud. Among those badges of fraud are the role and relationship that Gumis and Bonet had together, Bonet's active participation in the, quote, scheme to transfer assets away from the judgment debtors to Bonet for the purpose of protecting those assets, her participation and false scheme to try and manufacture false obligations to justify those false transfers, and her bad faith. Those are all bad faith factors. Those are all badges of fraud. Can I interrupt you to see if I'm on the same page with you again? Sure. If I jump to the punchline, is what you're saying here, Ms. Bonet's intent was a necessary element because it was an integral part of the fraud. Without it, you wouldn't have the fraud. We are absolutely on the same page, Judge. Her knowing participation and complicity in these fraudulent transfers was an integral part of the process and the method by which these intentional fraudulent transfers occurred. In fact, if you think about it, if you read through these findings, could Gumis have pulled this off without her participation? Without her participation in this fraud, could he have really pulled this off? Without her knowing receipt of these transfers, could he have pulled these intentional transfers off? Recall, one of the findings here is that Ms. Bonet is an insider of each of those judgment debtors that made these fraudulent transfers. And Judge, the Lord Abbott case that we cited in the brief states that where badges of fraud are enumerated in the fraudulent transfer are considered, the transferee's dealings with the debtor are most relevant. The defendant's relationship with the transferor and the motivation behind the transferee's dealings are properly under consideration when you're looking at these badges of fraud. So there's two places now where the Bonet's specific participation in this fraud were necessary for the ultimate conclusion that these fraudulent transfers were made with the intent to hinder delay into fraud. The first is with respect to the badges of fraud, and the second is with respect to that good faith determination. Do you have any other questions? I do not. We believe that summary judgment was appropriate and that this ruling should be upheld. Thank you, Mr. Rudd. All right, Ms. Sandweiss, do you have, we will reset your time, but it's three minutes, 21 seconds. Thank you, Your Honor. It's frankly shocking that Mr. Rudd would refer to a personal relationship or participation or even badges of fraud under a state statute when we are talking about bankruptcy discharge. 523A2, there is nothing that can be inferred properly from a personal relationship that would lead to actual intent. And remember, the reason that you go to trial, the reason you don't grant summary judgment is because exactly what Mr. Rudd and Judge Lafferty were talking about, that no one admits to fraud, no one admits to intent, but the fact finder is the one who assesses the demeanor and the credibility of a witness. And in this case, it would be as to this specific issue, which is a required element under 523. Well, let me stop you and ask you a very specific question, going back to finding number 25. If we determine that finding number 25, that she constructed the scheme to transfer assets to herself in cooperation with Goomis, but that she did that, and if that is essential, as he argues, to the judgment below, why was that not entitled to issue preclusive effect? What does that mean, constructed a scheme? I think we all know as lawyers of asset protection lawyers, people, you know, debtors go to a lawyer and they pay the lawyer to construct a perfectly legal scheme to protect their assets from creditors. Wasn't she able to argue that at the trial court, at the state court? Did she? All we have is this minute entry, and again, Judge Lafferty, as you pointed out, it is an ambiguous finding. Constructed a scheme. There are not very many findings that specifically address the conduct of the plaintiff. What she did to construct the scheme. Pardon me? What she did to construct the scheme. She did, right. What does that mean? I hear you. There are people who get paid $400, $500 an hour to construct a scheme to protect assets. But if that would have been a defense in the Arizona state court, isn't it too late to talk about that? No, because the issue of Ms. Bonet's intent was not, okay, look at it this way. Under this set of statutes, under Title 44, the intent of the transferee doesn't even appear in any of these statutes. So it was not an essential finding, and in fact, it was not a finding. The state court did not make a finding as to Ms. Bonet's intent, and it showed it could have made such a finding. If you look at Conclusion 1, and you read it very carefully, it certainly knew how to make a finding of actual intent, and it was Bonet was the recipient of a transfer. The transfer was made with actual intent, but who made the transfer? Gumas. All right. Thank you very much. All right, thank you for your good arguments. This matter will be being submitted, and an excellent argument on both sides. Thank you. Thank you.
judges: Taylor, Lafferty, Brand